996 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TERM AUTO SALES, INC., et al., Plaintiffs-Appellees,
v.
CITY OF CLEVELAND, et al., Defendants,
Howard E. Rudolph, Chief of Police; George Isherwood; R.
Kingzett; D. Valardo; J. Herron; B. Evans; M. Mell; A.
Sanders; J. Ours; D. Saggio; D. Sumskis; Unnamed
Uniformed and Plain Clothed Cleveland Police Officers,
Defendants-Appellants.
 No. 92-3909.
 United States Court of Appeals, Sixth Circuit.
 June 28, 1993.
 
 Before: GUY and SUHRHEINRICH, Circuit Judges; and JOINER, Senior District Judge*.
 PER CURIAM.
 
 
 1
 In this interlocutory appeal, individual defendants, several Cleveland, Ohio, police officers, contest the denial of their motion for summary judgment on grounds of qualified immunity in this § 1983 action arising from the search of plaintiffs' businesses. Defendants argue that they believed they acted lawfully in searching plaintiffs' businesses and seizing items that lacked federal certification labels or vehicle identification numbers (VINs), and no clearly established law existed to indicate otherwise. The trial court found two genuine issues of fact remained which precluded the grant of qualified immunity: (1) whether defendants knew that an Ohio state trial court had ruled prior to their search that the lack of federal certification labels does not violate Ohio criminal law; and (2) whether defendants knew that the Cleveland Police Department originally sold most of the seized items to plaintiffs without proper VINs. We reverse.
 
 I.
 
 2
 This case arises out of the July 21, 1986, search of Term Auto Sales and Brooklyn Salvage by the Cleveland Police Department's Auto Theft Unit. The search uncovered seven vehicles on the sales lot at Term Auto that had missing or obliterated federal certification labels, which are affixed permanently to the driver door of all cars and include the VIN and other information. Police seized those vehicles. In addition, the police seized several vehicle parts from Brooklyn Salvage that were located in that business' inventory room. Most of the parts seized had missing federal certification labels, but three had missing or destroyed VINs. The items were seized based on the officers' belief that the businesses were attempting to sell the vehicles and parts in violation of Ohio law.
 
 
 3
 A 21-count indictment was then issued against Term Auto and Brooklyn Salvage. The charges alleged violations of Ohio Rev.Code Ann. § 4549.62(d)(1) (1991), which makes it unlawful to receive, dispose of, conceal, or possess a motor vehicle part with knowledge that the VIN or a derivative thereof has been removed, defaced, covered, altered, or destroyed in such a way that the identity of the vehicle cannot be determined by a visual examination at the site where the manufacturer placed the number. None of the charges alleged that the vehicles or parts were stolen. Later, the court granted the assistant county prosecutor's motion to dismiss the indictment.
 
 
 4
 Plaintiffs then filed this § 1983 suit in federal court alleging that the City of Cleveland and individual Cleveland police officers violated plaintiffs' rights under the Fourth and Fourteenth Amendments.[1] In support of their claim, plaintiffs stated that all seven of the seized automobiles had been purchased legitimately by Term Auto, and the majority of the parts seized had been purchased by plaintiffs from the Cleveland Police Department. Further, plaintiffs alleged that at the time defendants seized the vehicles and parts it was clearly established under Ohio law that a federal certification label is not a derivative of a VIN, and therefore the defendants knew that probable cause did not exist to seize those items. Finally, defendants allegedly knew that the parts containing missing VINs were purchased by plaintiffs from the Cleveland Police Department. According to plaintiffs, this fact established that the police lacked good faith in electing to search plaintiffs' businesses and seize vehicles and parts.
 
 
 5
 In support of their contention that the law was clearly established at the time of the search, plaintiffs rely upon an Ohio state trial court ruling made five weeks before the July 21 search. In that case, the Court of Common Pleas for Medina County, Ohio, held that federal certification labels are informational only and not a VIN derivative as contemplated in Ohio Rev.Code Ann. § 4549.61 through § 4549.63. The decision was announced orally in conjunction with the court's grant of defendant's motion for dismissal of some of the criminal charges against him. Although the Ohio trial court sat in a jurisdiction different from that where the search occurred, plaintiffs argue that the defendants had knowledge of the law because three of the named defendants in this case appeared and testified at the criminal trial in Medina County. In fact, according to plaintiffs, the three defendants were in the Medina County courtroom when the court orally announced its ruling. In addition, according to plaintiffs, the Medina County case was investigated and prosecuted by the City of Cleveland and its Police Department Auto Theft Unit. Thus, according to plaintiffs, the defendants had actual knowledge of Ohio law on federal certificate labels.
 
 
 6
 The federal district court denied the individual defendants' motion for summary judgment based on the defense of qualified immunity. The officers appealed to this court, and we remanded the case to the trial court after concluding that "it would be imprudent to review the district court's ruling without the benefit of its reasoning." Term Auto, Inc. v. City of Cleveland, No. 91-3425, slip op. at 1 (6th Cir. March 19, 1992). Subsequently, the district court issued an opinion, again holding that the officers were not entitled to qualified immunity:
 
 
 7
 A genuine issue of material fact for the jury exists on the issue of the officers' "good faith" in searching the plaintiffs' premises if they had knowledge that the lack of federal certification [labels] did not violate Ohio law, and if they knew that many of the seized items had been purchased from the Cleveland Police Department without having proper VIN numbers on them.
 
 
 8
 (App. 654).
 
 
 9
 This timely interlocutory appeal followed.
 
 II.
 
 10
 Defendants argue on appeal that they are entitled to qualified immunity from plaintiffs' § 1983 claim because Ohio law on the status of federal certification labels was not clearly established at the time of their search in July of 1986. Moreover, defendants contend that their knowledge of how the plaintiffs obtained the cars and parts in question is irrelevant to the issue of qualified immunity. Plaintiffs were charged with attempting to sell cars and parts that had no VINs. According to defendants, Ohio law prohibits even those who purchase autos and parts from police from attempting to sell such items.
 
 A.
 
 11
 A government official acquires qualified immunity if his or her conduct does not violate clearly established federal "statutory or constitutional rights of which a reasonable person would have known" at the time the action was taken. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The proper inquiry is not whether the claimed right existed in the abstract, but whether a reasonable official would have known that the challenged conduct violated the right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Under this test, then, a public official will be immune from suit "if officers of reasonable competence could disagree" on whether the conduct violated the plaintiff's rights. Malloy v. Briggs, 475 U.S. 335, 341 (1986). A reviewing court must therefore examine, first, whether a plaintiff has demonstrated a clearly established right existed that was violated by the defendant; and second, whether a reasonable official in the defendant's position should have known at the time he acted that his conduct violated that right. Meyers v. City of Cincinnati, 979 F.2d 1154, 1156 (6th Cir.1992). Since the applicability of a qualified immunity defense is a pure question of law, we review the district court's decision de novo. Gossman v. Allen, 950 F.2d 338, 341 (6th Cir.1991).
 
 
 12
 In determining whether the law was clearly established, we consider "federal constitutional, statutory or case law existing at the time." Dominique v. Telb, 831 F.2d 673, 677 (6th Cir.1987). "When the focus is on decisional law, we examine initially, and most importantly, the decisions of the [United States] Supreme Court and the courts of this circuit." Poe v. Haydon, 853 F.2d 418, 424 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989). We may also look to the decisions of the highest state court in the state where the case arose. Robinson v. Bibb, 840 F.2d 349, 352 (6th Cir.1988). If case law from these sources is unavailable, we may also consider cases from other circuits in extraordinary circumstances. Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988). However, "[f]or the decisions of other courts to provide such 'clearly established law,' th[o]se decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." Id.
 
 B.
 
 13
 Cleveland police executed their search of plaintiffs' businesses pursuant to section 601.15 of Cleveland's ordinances. That section authorizes the warrantless inspection of vehicles in certain motor vehicle handling facilities including, among others, auto sale lots, vehicle salvage facilities, and junkyards. In January of 1986, the ordinance was amended to add vehicle parts to the scope of the administrative inspection. Prior to the January amendments, Ohio courts had upheld the Cleveland ordinance against constitutional attack. State v. Zinmeister, 27 Ohio App.3d 313 (1985).
 
 
 14
 In Zinmeister, the court concluded that the Cleveland ordinance involved a closely regulated industry and carefully limited inspections in time, place, and scope; therefore, the inspection scheme fell under the exception to a requirement for a search warrant established by United States v. Biswell, 406 U.S. 311 (1972). Zinmeister, 27 Ohio App.3d at 317. However, because the officers in Zinmeister exceeded the scope of the pre-amendment ordinance by seizing both vehicles and parts without a warrant, the court held that any vehicle part seized subject to the warrantless search must be suppressed. Id. at 318-20. Subsequently, the ordinance was amended to allow for the warrantless seizure of vehicle parts.
 
 
 15
 The defendants argue that their conduct in searching plaintiffs' businesses did not violate any of plaintiffs' clearly established rights, and we agree. The question is whether the subsequent seizure by defendants of several vehicles and vehicle parts violated any of plaintiffs' clearly established rights. Qualified immunity should attach to the defendants' actions if, on July 21, 1986, the law was not clearly established on the questions of (1) whether Ohio police officers could seize vehicles and parts that lacked federal certificate labels, and (2) whether Ohio police officers could seize vehicles and parts that lacked VINs despite knowing that the parts were acquired while in the same condition from the Cleveland Police Department.
 
 
 16
 Turning to the first issue, plaintiffs argue that the oral ruling of a Medina County judge five weeks prior to the Cleveland police officers' search of plaintiffs' businesses established clearly that federal certificate labels are not VINs or VIN derivatives. Under Ohio law, it is unlawful to buy or sell a vehicle or vehicle part with knowledge that the VIN or its derivative has been removed, altered, or destroyed. Ohio Rev.Code.Ann. § 4549.62(D)(1) (1991). The Ohio Supreme Court has never addressed whether a VIN derivative includes a federal certification label. Thus, despite the Ohio trial court's determination, that question has not been answered conclusively. See Robinson, 840 F.2d at 351 (explaining that a question must be decided by the highest state court in the state where the case arose in order to be clearly established for purposes of qualified immunity). It matters not that the defendants allegedly knew of the Medina County court's decision,[2] because on July 21, 1986, the conduct plaintiffs complain of did not constitute a clearly established violation of statutory or constitutional law. See Ohio Civil Serv. Employees Ass'n, 858 F.2d at 1177-78 ("[A] mere handful of decisions of other circuit and district courts ... cannot form the basis for a clearly established constitutional right in this circuit.").
 
 
 17
 Next, plaintiffs intimate that clearly established Ohio law prohibits police officers from seizing vehicles and parts when those items were acquired from a municipality or its police department without having proper VINs on them. Our reading of the applicable law is quite to the contrary and leads us to conclude that defendants acted lawfully when they seized items they maintained were being offered for sale by plaintiffs. Ohio law criminalizes the resale of any vehicle or part that lacks a proper VIN or its derivative, regardless of the method by which the item was acquired.
 
 
 18
 The plaintiffs were charged with violating section 4549.62(D)(1) for attempting to sell vehicles and parts that did not have proper VINs. Section 4549.62(D)(3) provides that it is not a crime for a scrap metal processing facility or a motor vehicle salvage dealer to acquire such vehicles and parts as junk or scrap, but the section does not sanction the resale of such items. Another exception is set forth in section 4549.62(D)(4), which permits an owner to keep a vehicle upon showing all of the following:
 
 
 19
 (i) That the vehicle identification number or derivative thereof on the vehicle or part has been removed, defaced, covered, altered, or destroyed, after the owner acquired such possession, by another person without the consent of the owner, by accident or other casualty not due to the owner's purpose to conceal or destroy the identity of the vehicle or vehicle part, or by ordinary wear and tear;
 
 
 20
 (ii) That the person is the owner of the vehicle as shown on a valid certificate of title issued by this state or certificate of title or other lawful evidence of title issued in another state, in a clear chain of title beginning with the manufacturer;
 
 
 21
 (iii) That the original identity of the vehicle can be established in a manner that excludes any reasonable probability that the vehicle has been stolen from another person.
 
 
 22
 None of these exceptions apply to the plaintiffs' conduct, for they were charged with attempting to resell vehicles and parts that lacked VINs and VIN derivatives. Thus, even if we assume, as we must, that defendants knew of the chain of possession of these items, that fact is irrelevant. Reasonable officers could conclude that they were not violating any clearly established rights by seizing items that they had probable cause to believe were being resold to the public.
 
 
 23
 REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Then-Cuyahoga County Prosecutor John T. Corrigan and then-Assistant County Prosecutor James P. Madden, Jr., were also named as defendants in the original complaint. Plaintiffs later moved to dismiss the case voluntarily against defendants Corrigan and Madden pursuant to Fed.R.Civ.P. 41(a)(2), and the district court granted the motion
 
 
 [2]
 When considering qualified immunity, of course, we must view the case as if everything the plaintiff alleged were true